FILED

SEP 21 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

In re:                                    )    Case No. 15-20600-D-11
                                          )
SAEED REZA ZARAKANI,                      )    Docket Control No. HLC-1
                                          )
                         Debtor.          )    Date:  September 7, 2016
                                          )    Time:  10:00 a.m.
_____ )    Dept:  D

## MEMORANDUM DECISION

On August 10, 2016, Westwood-Benson Business Brokers ("Westwood") filed a motion for allowance and payment of an administrative expense, Docket Control No. HLC-1.  Saeed Zarakani (the "debtor") has filed opposition, Westwood has filed a reply, and the court has heard oral argument and considered the parties' declarations and exhibits.  Neither party requested an evidentiary hearing and the court finds an evidentiary hearing is not necessary.  For the following reasons, the motion will be granted in part.

The motion centers on the employment by the debtor, during his tenure as the debtor-in-possession in this chapter 11 case, of Westwood to market two businesses, a Chevron gas station and convenience market and a mobile home park.  The debtor and Westwood entered into Representation Agreements for Westwood's marketing of the two properties, which provided for the following compensation to Westwood:  a "5% commission for any real estate sold and 7% for any business assets sold," with a minimum broker's fee of $15,000 for each business.  The agreements

confirm that Westwood was aware the debtor was a debtor-in-possession in a pending bankruptcy case.

In September of 2015, the debtor filed an application to employ Westwood.  In support, Richard K. Thompson, a principal of Westwood, signed a declaration in which he stated,

> I understand that the Debtor seeks court approval of the estate's employment of Westwood, that if Westwood's employment is approved any compensation payable by the Debtor or the bankruptcy estate for pre-confirmation services is subject to Bankruptcy Court approval, and that such compensation must be applied for and approved by the Bankruptcy Court pursuant to 11 U.S.C. § 330.

Westwood Decl., DN 152, at ¶ 9.  The application itself, which was served on Mr. Thompson at the time, added, "If the employment is approved, Westwood will, with the Debtor's assistance, file any pre-confirmation motion or motions that may be necessary to obtain approval of pre-confirmation compensation payable to Westwood."  Debtor's App., DN 150, at ¶ 9.

The court authorized the debtor to employ Westwood by order signed September 21, 2015.  The order stated the debtor was authorized to employ Westwood "as the debtor's broker for the purposes described in the application, subject to the following terms and conditions pursuant to 11 U.S.C. § 328(a):  1.  No compensation is permitted except upon court order following application pursuant to 11 U.S.C. § 330(a)."  Order, DN 157, at 1:22-26.  The order was served on Mr. Thompson, among others, the next day, September 22, 2015.

Ultimately, however, the debtor, with court approval, obtained financing that enabled him to pay all claims secured by the real property where the Chevron station is located, as well as allowed unsecured claims, and neither the Chevron station nor

the mobile home park was sold.  Despite the fact that no sale
occurred, Westwood seeks allowance and payment of an
administrative claim for (1) $15,000 as the minimum fee for the
mobile home park and (2) $131,400 as a commission based on an
offer Westwood obtained for the gas station business and real
property, for a total of $146,400.  Relying on provisions in the
Representation Agreements, Westwood also seeks an award of
attorney's fees and costs for prosecuting this motion.

The court begins by observing that, apparently based on the
order authorizing Westwood's employment, both parties appear to
be of the mind that the Representation Agreements are fully
enforceable agreements the court is bound to enforce according to
their specific terms.  Thus, Westwood refers to the "Court-
approved contract[s]" and the parties spend considerable effort
analyzing the language in the fine print of the agreements and
emphasizing one or another provision they find helpful to their
position.  The court, however, never approved the agreements
themselves or their specific terms and does not consider itself
bound by the Representation Agreements or either the $15,000
minimum fee or the commission structure.

The employment application did not expressly seek approval
of and the order did not approve the underlying agreements or
their terms.[1]  In fact, the order is explicit that "[n]o
compensation is permitted except upon court order pursuant to 11
U.S.C. § 330(a)."  Further, the order states compensation will be

---

1.  Although the application referred to the agreements as
being subject to the court's approval, it also made clear that
Westwood understood its compensation would be subject to court
approval on a subsequent motion.

at the lodestar rate; that is, on an hourly basis, not a
commission basis.  In hindsight, the application and order should
have been clearer.  However, both were served on Westwood at the
time and Westwood raised no objection, to either the lodestar
rate reference or the absence of approval of the agreements or
their terms.

The employment application was served only on the United
States Trustee and those creditors who had requested special
notice, not on all creditors, and it was filed on an ex parte
basis, without a hearing, and ruled on after only ten days, in
accordance with the court's usual practice for employment
applications.  Further, the application did not so much as
suggest that regardless of whether either business was sold,
Westwood would be entitled to an administrative claim equal to 5%
and 7% of the listing prices for the real property and business
assets, respectively, or of the amounts of an offer Westwood
obtained.  Copies of the agreements were filed with the
application and the fine print in the agreements included
language purporting to entitle Westwood to its full percentage
fee if the debtor decided not to or was unable to go through with
a sale.  However, the court would not have approved the specific
terms of the agreements without a noticed hearing of those terms,
along with service on all creditors.

Although this would have been true in any case, it is
especially noteworthy here, given the amounts of the expected
listing prices and the consequent size of the commissions
involved.  For the Chevron station alone, the commission - not
disclosed in the application itself - would have resulted in an

- 4 -

administrative claim in excess of $130,000 without any notice to
creditors and other parties in interest.  This is a figure so
large it would have significantly affected and greatly limited
the debtor's ability to obtain confirmation of a chapter 11 plan.
A claim of that size would be by far the largest administrative
claim in the case – almost double the amount of the debtor's
attorney's fees for the entire case, and if approved at the time
of Westwood's employment, it likely would have jeopardized the
debtor's ability to reorganize.  To allow an administrative claim
of that size without notice to creditors and parties in interest
based solely on the employment order would be contrary to both
the requirements and the spirit of the Bankruptcy Code.

The Code charges a debtor-in-possession with a fiduciary
duty that requires him or her to act in the best interest of
creditors.  Thus, a debtor-in-possession can operate in the
ordinary course of business, but any transactions outside the
ordinary course require court approval after a hearing on notice
to all creditors, and all professional administrative claims
require such notice.  The court simply would not consider, let
alone allow, an administrative claim the size of the one at issue
here based solely on an employment order without a noticed
hearing to all creditors that explicitly advised creditors that a
commission of that size would be payable even if the properties
were not sold.

With that said, and considering the way the case developed,
the court is readily persuaded Westwood is entitled to some
compensation for its services.  Here, the court begins by noting
the record makes clear that, from before the time the debtor

employed Westwood, the debtor was contemplating a sale or
refinance of one or both businesses as a means of funding a
chapter 11 plan.  In fact, the plan on file at the time the
Westwood employment application was filed indicated it would be
funded through a sale or refinance, and it is clear from an email
from the debtor's counsel dated October 5, 2015 that Mr. Thompson
knew the plan was on file.  Further, the debtor's counsel's
declaration and billing statements make clear counsel spoke with
Mr. Thompson about possible sources of refinancing in mid-
December of 2015.  Also as early as mid-December, Mr. Thompson
initiated communications with someone at Plumas Bank about a
possible refinance of the debt on the Chevron station.  Thus, Mr.
Thompson was aware from early on that refinancing as an
alternative to sale was in play.

It is also clear that while the debtor was considering
refinancing, he wanted to keep his options open, and thus, had
Mr. Thompson continue with his efforts toward a sale of the
properties.  The parties disagree as to whether Mr. Thompson
abandoned his marketing efforts for the mobile home park or
whether the fault lies with the alleged failure of the debtor to
provide the necessary financial information.  However, the court
finds resolution of that factual dispute would entail additional
attorney's fees for both parties with little chance of a
definitive conclusion on the issue.  In any event, the fact that
the debtor, as debtor-in-possession, decided a refinance was a
better way for him to restructure his affairs, in part for tax
reasons, should not deprive Westwood of reasonable compensation
for services that were reasonably expected to benefit the estate.

- 6 -

If nothing else, Westwood's services allowed the debtor to keep his options open.

In determining the amount of reasonable compensation for those services, the court notes that Mr. Thompson kept virtually no time records; instead, he testifies he has reviewed his calendar and the extensive files he developed during the marketing process and determined he spent roughly 160 to 175 hours each month for seven months and 80 to 100 hours in the first and last months of his employment.  These estimates are extremely summary and do not conform with the Guidelines for Compensation of Professionals issued by the United States Trustee's office.  On the other hand, it is not common or expected that a business or real estate broker will keep detailed time records and, while such records would be helpful at this stage, the court cannot reasonably expect Mr. Thompson to have kept them.

The court needs to consider Westwood's administrative claim in terms of benefit to the estate.  In assessing benefits to the estate, the court views the claim with an eye toward proportionality compared to other administrative claims in the case, such as that of the debtor's counsel.  The attorney's fees incurred in the representation of the debtor, as debtor-in-possession, were $67,390 for the whole case.  The court finds that the demands of acting as general counsel for this debtor-in-possession, as well as the benefit to the estate, would have exceeded those of a professional charged with the more specific task of marketing properties, even ongoing businesses.  The court recognizes that the case was ultimately dismissed on the debtor's

1 motion, but it went as far as a contested plan confirmation
2 hearing on a couple of occasions.

3    As an aside, it appears to the court that, unfortunately,
4 both parties dropped the balled to a large extent in terms of
5 their relationship with one another.  A debtor-in-possession has
6 a duty to ensure his utilization of professionals in the case is
7 efficient and the services they rendered are necessary and
8 beneficial to the estate.  At the same time, a professional must
9 ensure the services he renders are performed efficiently and will
10 be of benefit to the estate.  Here, the debtor had a
11 responsibility to keep Mr. Thompson in the loop about his
12 prospects for a refinance and to let him know when a decision had
13 been made, even if only tentatively, and Mr. Thompson had a
14 responsibility not to thoughtlessly put in hours marketing the
15 properties and to be sensitive to the possibilities of a sale or
16 refinance and to keep informed about the direction the case was
17 heading.  Both parties were remiss in the above regard.

18    To conclude, with no contemporaneous records as a guide, but
19 considering all the factors discussed above, the court believes
20 reasonable compensation for Mr. Thompson's services in this case
21 is $40,000, and the court will set the debtor's liability to
22 Westwood at that amount.  The court will issue an appropriate
23 order.

25 Dated: September 21, 2016
ROBERT S. BARDWIL
26 United States Bankruptcy Judge

- 8 -

# Instructions to Clerk of Court
## Service List – Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the U.S. Mail.

Saeed Reza Zarakani
1650 Gold Rush Way
Penryn CA 95663

Office of the U.S. Trustee
Robert T Matsui United States
Courthouse
501 I Street, Room 7-500
Sacramento CA 95814

Westwood-Benson Business Brokers
9700 Village Center Dr # 50-N
Granite Bay CA 95746

Anthony Asebedo
11341 Gold Express Drive, #110
Gold River CA 95670

George C. Hollister
655 University Ave #200
Sacramento CA 95825